UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Adolph Mongo,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No. 16-12885

City of Detroit et al.,　　　　　　　　　　Sean F. Cox
　　　　　　　　　　　　　　　　　　　　United States District Court Judge

    Defendants.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this § 1983 case Plaintiff brings claims against the City of Detroit, its police chief, and one police officer for perceived constitutional violations after his vehicle was impounded during a traffic stop for running a red light. In response, Defendants have moved to dismiss or, in the alternative, for summary judgment.

For the reasons below, the Court shall grant Defendants' Motion for Summary Judgment. Because the decision to impound Plaintiff's vehicle based on his apparent lack of insurance was objectively reasonable, Plaintiff cannot show that his constitutional rights were violated. Also, even if his rights were violated, Defendants are either entitled to qualified immunity or cannot be held liable for the underlying conduct. And because the Court will grant the more inclusive Motion for Summary Judgment, it need not address Defendants' Motion to Dismiss.

**BACKGROUND**

In August 2015, Detroit Police Officer Juan Windham pulled Plaintiff Adolph Mongo over after he ran a red light. Windham Dep., p. 19-20. What occurred at this traffic stop is

1

captured by the dash camera video from Windham's vehicle, Def. Ex. L; Pl. Ex. 4, and the Court shall view the facts in the light depicted by that video. *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017). Insofar as the video does not show all of the relevant facts, those facts are drawn from the record and viewed in the light most favorable to Plaintiff as the non-moving party. *Id*.

After he was stopped, Plaintiff was unable to produce his license, registration, or insurance. Windham Dep., p. 24. He indicated to Windham that he had left these documents at the bar. *Id*. at 34-35. After obtaining Plaintiff's name, date of birth, and address, Windham checked for Plaintiff's information in the State of Michigan's Law Enforcement Information Network (LEIN). *Id*. at 24-25. The database indicated that Plaintiff did not have insurance on the vehicle and that his license was ineligible. *Id*. at 24. Windham informed of this. Def. Ex. L.

Windham decided to impound Plaintiff's vehicle because Plaintiff's license was listed as ineligible and his vehicle had no insurance. *Id*. Windham believed that it would not have been safe to leave the vehicle where it was. Windham Dep., p. 115-16. After deciding to impound the vehicle, Windham also repeatedly informed Plaintiff that he was free to leave. Def. Ex. L. Nevertheless, Plaintiff remained at the scene. *Id*. Throughout the stop, Windham repeatedly stated that his decision to impound the vehicle was based on the lack of insurance and Plaintiff's ineligible license. *Id*. This latter reason, however, mistakenly conflated an "ineligible" license status (wherein the license is still valid) with a "suspended" status (the license is invalid).[1]

Before the vehicle was towed, Plaintiff's wife arrived and Plaintiff asked her to get his information and bring it to him. *Id*.; Windham Dep., p. 27. Plaintiff also became increasingly

---

[1] According to Plaintiff's counsel at the hearing, a license may be listed as "ineligible" when the license-holder has unpaid tickets. The license is still valid but cannot be renewed until the tickets are paid. Defendants' counsel did not dispute this characterization.

hostile towards Windham, yelling and cursing at him. Def. Ex. L. Eventually, Plaintiff called Detroit Police Chief James Craig, who instructed him to ask Windham to call a supervisor. Upon Plaintiff's request, Windham did so. Dep., p. 26; Def. Ex. L. He also temporarily halted the impoundment. Def. Ex. B., ¶ 10.

In response to Windham's call, Detroit Police Sergeants Corey Karssen and Rubin Fluker arrived at the scene. Windham Dep., p. 27. Windham informed Karssen that Plaintiff did not have insurance and that his license was listed as ineligible. Def. Ex. B., ¶ 4. Karssen confirmed this by reviewing Plaintiff's information in LEIN. *Id*. at ¶ 5. Eventually, Plaintiff's wife returned with Plaintiff's license, registration, and proof of insurance. *Id*. at ¶ 6. Karssen attempted to verify that Plaintiff's vehicle was insured by calling the number listed on the certificate of insurance, but he was unable to reach anyone. *Id*. at ¶ 7. Because the vehicle was uninsured, Karssen directed the towing company to proceed with the impoundment. *Id*. at ¶ 10.

Windham issued tickets to Plaintiff for disregarding a red light, no copy of registration, no proof of insurance, fraudulent/false insurance information, driving while license not valid or improper license, and no insurance. Def. Ex. D. He did not arrest Plaintiff. Def. Ex. B., ¶ 9.

When Karssen returned to the station, he continued to attempt to verify Plaintiff's insurance and eventually discovered that Plaintiff's vehicle was in fact insured. *Id*. at ¶ 11. Karssen cancelled the tickets issued to Plaintiff, although the ticket for running the red light was re-issued and mailed to him. *Id*. at ¶ 12. That same day, Plaintiff retrieved his car from the towing company. *Id*. at ¶ 13.

Shortly thereafter, Plaintiff authored an editorial about his experience in Dateline Detroit that criticized Windham and the Detroit Police Department. Def. Ex. E. In response, Chief Craig

appeared at a press conference to discuss the incident. Def. Ex. M. During the press conference, he stated that he believed that Windham had acted properly and professionally and noted Plaintiff's lack of a license or insurance. *Id*. While discussing Plaintiff's ineligible license, Craig also mistakenly equated an ineligible license with a suspended license. *Id*.

Plaintiff has now sued Windham, Craig, and the City of Detroit under § 1983. His amended complaint raises the following claims: (1) unreasonable seizure of his person and his vehicle; (2) a failure to supervise claim against Craig for the unreasonable seizure; and (3) municipal liability claims against Craig (in his official capacity) and the City of Detroit (Doc. # 12). Defendants have moved to dismiss or, in the alternative, for summary judgment (Doc. # 19). Plaintiff has responded (Doc. # 27). The Court held a hearing on this motion on March 1, 2018.

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

## ANALYSIS

Plaintiff brings a 42 U.S.C. § 1983 claim against Defendants under several different theories. To prevail, he must show that (1) he was deprived of a right, privilege, or immunity secured by the Constitution and (2) the deprivation was caused by a person action under color of state law.[2] *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008). Plaintiff must also overcome any defenses of absolute or qualified immunity. *See Everson v. Leis*, 556 F.3d 484,

---

[2] Defendants do not dispute that this prong has been satisfied.

493 (6th Cir. 2009).

## I. Unlawful Seizure

At the hearing, Plaintiffs' counsel conceded that Plaintiff does not challenge the lawfulness of the traffic stop and that Plaintiff is no longer challenging the seizure of his person. Thus, the only unlawful seizure claim remaining before the Court is Plaintiff's allegation that Windham violated his Fourth Amendment rights by unlawfully seizing his vehicle.

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Here, Plaintiff's possessory interests were meaningfully interfered with when Windham removed him from his vehicle and made the initial decision to impound it. But this alone does not establish a constitutional violation; the Fourth Amendment only protects against *unreasonable* seizures. *See Virginia v. Moore*, 553 U.S. 164, 169 (2008).

An impoundment decision is consistent with the Fourth Amendment when it is objectively justifiable, regardless of the officer's subjective intent. *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001). And a decision to impound is reasonable so long as it is "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *See United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013), quoting *United States v. Jackson*, 682 F.3d 448, 454 (6th Cir. 2012). The decision will not be unreasonable "simply because alternatives to impoundment might exist." *Id*. Thus, the Court's Fourth Amendment inquiry focuses on whether the "decision to impound was reasonable under the circumstances." *Collins v. Nagle*, 892 F.2d 489, 494 (6th Cir. 1989).

After stopping Plaintiff, Windham discovered that LEIN indicated that Plaintiff's license

was ineligible and that his vehicle lacked insurance. This discovery led Windham to decide to impound the vehicle; a rationale that is corroborated by Windham's repeated statements to that effect during the traffic stop. In response, Plaintiff contends that there is a genuine issue of fact; he claims that his vehicle was impounded solely because his license was ineligible. But Plaintiff cannot create an issue of material fact through his conclusory statements that something in the record is not true. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). Indeed, the video evidence shows quite the opposite; Windham repeatedly indicated that the vehicle's apparent lack of insurance was a primary factor in the decision to impound the vehicle.

More importantly, even if Plaintiff is correct about Windham's subjective intentions, any reliance by Windham on Plaintiff's license being ineligible is irrelevant. The Fourth Amendment analysis turns on whether the decision was *objectively* justifiable. *Kimes*, 246 F.3d at 805. And the perceived absence of insurance was an objectively justifiable reason for Windham to decide to tow the vehicle. Under Michigan law, a vehicle may not be operated if it is uninsured. M.C.L. § 500.3102. And Windham's unrefuted testimony shows that the decision to impound the vehicle, which he believed could not be lawfully operated, for lack of insurance was consistent with Detroit Police Department policy. *See United States v. Ballard*, 432 F. App'x 553, 556 (6th Cir. 2011). Under similar circumstances, courts have upheld officers' decisions to impound an uninsured vehicle as reasonable. *See id.* at 556-57; *Redmond v. Sanders*, 858 F. Supp. 2d 809, 821 (E.D. Mich. 2012). So too here. Based on the information at Windham's disposal, the decision to impound the vehicle was reasonable. Thus, Plaintiff's Fourth Amendment rights were

6

not violated and Windham is entitled to summary judgment.

There is, however, one nuance (unaddressed by either party) that the Court will take the opportunity to briefly address: the impoundment decision relied on a mistake of fact. Plaintiff did have insurance, the government records were simply incorrect.

Does this affect the Fourth Amendment analysis? After all, a seizure based on a mistake of fact can be reasonable. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014); *see also Herring v. United States*, 555 U.S. 135, 139 (2009) ("When a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation."). But this may not always be the case, when a mistake of fact is attributable to a government agency it is possible that a seizure made in reliance on it could violate the Fourth Amendment. *See United States v. Hensley*, 469 U.S. 221, 232 (1985) ("If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment."); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) ("[A]n otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.").

Under the circumstances, Windham's reliance on a mistake of fact not attributable to the Detroit Police Department appears to have been entirely reasonable. But, in any event, it is unnecessary to determine whether this mistake of fact has any effect on the Fourth Amendment analysis. Even if the decision to impound the vehicle–made in reasonable reliance on an erroneous computer record–violated the Fourth Amendment, Windham is entitled to qualified immunity. The relevant question in this regard is whether a reasonable officer could have believed the seizure to be lawful, in light of clearly established law and the information that

Windham possessed. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). This standard "gives ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Windham falls within neither of these categories. His decision to rely upon the information in LEIN indicating that Plaintiff lacked insurance on his vehicle was objectively reasonable. *See Herring*, 555 U.S. at 147; *Arizona v. Evans*, 514 U.S. 1, 15-16 (1995) ("There is no indication that the arresting officer was not acting objectively reasonable when he relied upon the police computer record."). And there is no evidence that the LEIN system was recklessly maintained or that Plaintiff's information was knowingly falsified. *See Herring*, 555 U.S. at 146. Thus, even if Plaintiff's rights were violated, Windham is entitled to qualified immunity, and summary judgment, on the unlawful seizure claim.

## II. Supervisory Liability

Along with his unlawful seizure claim against Windham, Plaintiff brings that same claim against Chief Craig under a supervisory liability theory. But there can be no supervisory liability here because Windham, as Craig's subordinate, did not violate Plaintiff's constitutional rights and has immunity from his constitutional claims. *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor.").

Also, even if Plaintiff had established that Windham violated his Fourth Amendment rights, a reasonable jury could not find that Craig encouraged a specific incident of misconduct or otherwise directly participated in it. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or

8

knowingly acquiesced in the unconstitutional conduct of the offending officers."). Craig was not present at the traffic stop and there is no evidence that he directed or approved, even implicitly, the decision to impound Plaintiff's vehicle. Nor does Craig's post hoc defense of Windham's actions suffice. A reasonable jury could not find a causal connection between Windham's actions and Craig's comments about them five days later. *See Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982) (holding supervisory liability requires "a causal connection between the misconduct complained of and the official sued."). Thus, Craig is entitled to summary judgment on Plaintiff's unlawful seizure claim.

### III. Municipal Liability

Finally, Plaintiff brings municipal liability claims against Chief Craig (in his official capacity) and the City of Detroit on several different theories. He argues that (1) the City had an unconstitutional custom, policy, and practice that was the moving force behind the seizure, (2) the City is liable because Craig ratified Windham's actions, and (3) the City failed to properly train its officers to use and correctly interpret the LEIN system results.

Under § 1983, a municipality can be held liable when an alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 690 (1978). For his *Monell* claim, Plaintiff must prove two basic elements: (1) that a constitutional violation occurred and (2) that the City is responsible for that violation. *Doe v. Claiborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996). To show that the City is responsible, Plaintiff must prove (1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the alleged constitutional deprivation." *Lilly v. City of Clarksville*, 510

9

F. App'x 374, 376 (6th Cir. 2013). The existence of a municipal policy or custom can be shown through: (1) the municipality's legislative enactments or official policies; (2) the ratification of illegal actions by an official with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Plaintiff's municipal liability claim does not make it out of the gate. As explained above, a reasonable jury could not conclude that his constitutional rights were violated when his vehicle was impounded. This alone is fatal to his claim. *Doe*, 103 F.3d 505. And, even if a constitutional violation did occur, Plaintiff's *Monell* claim still fails because he cannot show the existence of a municipal policy or custom.

First, although Plaintiff alleges that the City has an unconstitutional policy of towing vehicles when a driver's license is shown as ineligible in LEIN, he has not identified, and the record contains no evidence of, any written policy or enactment to that effect. *Baynes*, 799 F.3d at 621. Nor does the record include any indication that "there is a particular custom or practice that although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) (quotation marks omitted). Indeed, the unrefuted deposition testimony denies any existence of the alleged policy.

Second, Plaintiff's attempt to show the existence of an unconstitutional policy through Craig's purported ratification of Windham's actions also fails. For a single-act theory, Plaintiff must show that Craig's post hoc approval of Windham's conduct was "the moving force behind or the cause of plaintiff's harm." *Burgess*, 735 F.3d at 479. He cannot do so. Craig's "after-the-

fact approval" of Windham's actions, which "did not itself cause or continue a harm" against Plaintiff, cannot support a *Monell* claim. *Id.*; *Williams v. Ellington*, 936 F.2d 881, 884-85 (6th Cir. 1991) (holding a School Board could not be liable for ratifying a search because its "single, isolated decision [could] hardly constitute the 'moving force' behind the alleged constitutional deprivation.").

Finally, Plaintiff also argues for the first time that the City is liable due to its failure to properly train its police officers to use and understand the LEIN system. The Court notes that a summary judgment response brief is not the appropriate place to raise this new claim. *See Tucker v. Union of Needletrades, Indus. and Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)."). Thus, the Court could decline to consider this claim on that basis.

But the claim also fails on its merits. Plaintiff must show that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Plaintiff cannot show deliberate indifference, which requires showing "prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). The record contains no evidence to that effect. And Plaintiff's allegation that Windham was unsatisfactorily trained, even if true, is insufficient. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Also, because the perceived

lack of insurance provided an objectively reasonable justification to impound Plaintiff's vehicle, he cannot show that any inadequate training for recognizing invalid licenses was closely related to or actually caused the impoundment. Thus, for the preceding litany of reasons, a reasonable jury could not find either the City or Craig liable on Plaintiff's municipal liability claims and they are entitled to summary judgment.

## CONCLUSION

For the reasons above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

>                             s/Sean F. Cox
>                             Sean F. Cox
>                             United States District Judge

Dated:  March 6, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 6, 2018, by electronic and/or ordinary mail.

>                             s/Jennifer McCoy
>                             Case Manager